IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| OREGON SCHOOL ACTIVITIES ASSOCIATION, | ) ) ) |
| Plaintiff, | ) No. CV-05-214-HU ) |
| v. | ) ) |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENN- SYLVANIA, | ) ) OPINION & ORDER ) ) |
| Defendant. | ) ) |

Jonathan M. Radmacher
J. Kurt Kraemer
McEWEN GISVOLD LLP
1100 S.W. Sixth Avenue, Suite 1600
Portland, Oregon 97204

  Attorneys for Plaintiff

Donald Verfurth
CARNEY BADLEY SPELLMAN, P.S.
700 Fifth Avenue, Suite 5800
Seattle, Washington 98104-5017

  Attorneys for Defendant

HUBEL, Magistrate Judge:

  Plaintiff Oregon Schools Activities Association brings this insurance coverage dispute against defendant National Union Fire

1 - OPINION & ORDER

Insurance Company of Pittsburgh, Pennsylvania, regarding defendant's failure to pay past and ongoing costs to plaintiff for underlying litigation against plaintiff. Both parties move for summary judgment. Both parties have consented to entry of final judgment by a Magistrate Judge in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). I grant defendant's motion and I deny plaintiff's motion.

## BACKGROUND

Defendant issued to plaintiff two insurance policies covering certain claims against plaintiff. The first policy had a "policy period" of August 1, 1999, to August 1, 2000 ("the 1999 policy"), and the second had a "policy period" of August 1, 2000, to August 1, 2001 ("the 2000 policy").

In the spring of 2000, a dispute arose between plaintiff and students at the Portland Adventist Academy regarding plaintiff's scheduling of the Class 2A Oregon High School Basketball Tournament. The students' religious beliefs prohibit them from engaging in certain activities during their Saturday Sabbath, from sundown Friday to sundown Saturday. The students requested that plaintiff prohibit events scheduled during this time.

On May 8, 2000, the students presented their claim of religious discrimination to plaintiff's Executive Board. Exh. 1 to July 5, 2005 Neal Philip Affid. On June 3, 2000, the Executive Board's President issued a written Order and Opinion denying the students' complaint. Id. On June 30, 2000, the students appealed that Order to the State of Oregon's Superintendent of Public Instruction. Exh. 2 to July 5, 2005 Philip Affid. In the appeal letter, the students, identified as "claimants," requested a

2 - OPINION & ORDER

hearing and a variety of relief. Id. June 30, 2000, is between August 1, 1999, and August 1, 2000, the 1999 policy period.

Defendant received notice of the claim on or about March 2, 2001, when plaintiff first reported the claim to defendant. Exh. 6 to July 5, 2005 Philip Affid. March 2, 2001, is between August 1, 2000, and August 1, 2001, during the 2000 policy period. In a September 19, 2002 letter, defendant denied coverage of the claim because it was not made and reported during the policy period of August 1, 2000, to August 1, 2001. Exh. F. to Aug. 29, 2005 Donald Verfurth Affid. In a subsequent letter dated July 15, 2004, defendant reiterated its position that because the claim was first made before the inception of the August 1, 2000, to August 1, 2001 policy period, and defendant did not receive notice of the claim until March 2, 2001, there was no coverage for the matter. Exh. 1 to July 18, 2005 Kurt Kraemer Affid. Defendant also reminded plaintiff of Clause 8 of the policy, prohibiting the insured from incurring defense costs without the insurer's prior written consent. Id. Defendant also recommended that plaintiff contact its general liability carrier and any other insurance carriers where coverage may be applicable. Id.

This litigation began after defendant denied plaintiff's claim under the policy.

## STANDARDS

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'pleadings, depositions,

3 - OPINION & ORDER

answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

"If the moving party meets its initial burden of showing 'the absence of a material and triable issue of fact,' 'the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense.'" Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991) (quoting Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987)). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex, 477 U.S. at 322-23.

The substantive law governing a claim determines whether a fact is material. T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). All reasonable doubts as to the existence of a genuine issue of fact must be resolved against the moving party. Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986). The court should view inferences drawn from the facts in the light most favorable to the nonmoving party. T.W. Elec. Serv., 809 F.2d at 630-31.

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. Id.; In re Agricultural Research and Tech. Group, 916 F.2d 528, 534 (9th Cir. 1990); California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).

4 - OPINION & ORDER

DISCUSSION

I. Preliminary Issue Regarding Authentication of Defendant's Summary Judgment Exhibits

In its response to defendant's motion, plaintiff argues that Exhibits 1, 2, and 6 to Philip's July 5, 2005 Affidavit, submitted by defendant in support of its motion, should be stricken for lack of proper authentication. Exhibit 1 is a copy of the "Order and Opinion Denying Complaint, dated June 3, 2000, issued by plaintiff and signed by John Harrington. Exhibit 2 is a copy of a June 20, 2000 letter from Charlie Hinkle, attorney representing the "claimants," meaning the students from Portland Adventist Academy, to Stan Bunn, Oregon Superintendent of Public Instruction, seeking a hearing and certain relief. Exhibit 6 is a copy of a letter dated March 2, 2001, from Lowell T. Gratigny of American Specialty Insurance Services, Inc., to Pam Schwager of AI Management, regarding plaintiff's claim.

Without deciding whether the exhibits were properly authenticated as originally submitted, I reject plaintiff's argument because defendant cured any authentication errors with the additional submissions it made with its reply brief. In Philip's August 1, 2005 Supplemental Affidavit, he states that Exhibits 1 and 2 were produced to defendant by plaintiff with plaintiff's Rule 26(a) disclosure. Attached to the Supplemental Affidavit is a true and correct copy of the disclosure, produced to defendant by plaintiff on April 25, 2005, along with copies of Exhibits 1 and 2, both of which accompanied the disclosure.

Additionally, defendant submits an affidavit from Hinkle who authored Exhibit 2. Hinkle attests that the copy of the June 30,

5 - OPINION & ORDER

2000 letter addressed to Bunn and attached to his affidavit, is a true and correct copy of that letter.

Finally, defendant submits the declaration of Taffy Troup authenticating documents American Specialty Insurance Services, Inc., produced to defendant in this litigation, one of which was Exhibit 6.

For Exhibits 1, 2, and 6 to Philip's July 5, 2005 Affidavit, no authentication issues remain given the additional documents submitted with defendant's reply.

II. Relevant Policy Provisions

The relevant portions of the 1999 policy and the 2000 policy are the same. Because, as noted below, there is no dispute that plaintiff received notice of the claim against it during the 1999 policy, I quote from that policy.

The policy defines "claim" as follows:

(1) a written demand for monetary relief; or

(2) a civil, criminal, regulatory or administrative proceeding for monetary or non-monetary relief which is commenced by:

    (I) service of a complaint or similar pleading;

    (ii) return of an indictment (in the case of a criminal proceeding); or

    (iii) receipt or filing of a notice of charges; or

(3) any request to toll or waive any statute of limitations.

Exh. 4 to July 5, 2005 Philip Affid. at p. 4.

"Policy Period" and "Policy Year" are defined as follows:

"Policy Period" means the period of time from the inception date shown in Item 3 of the Declarations to the earlier of the expiration date shown in Item 3 of the Declarations or the effective date of cancellation of this policy.

6 - OPINION & ORDER

"Policy Year" means a period of one year, within the Policy Period, commencing each year on the day and hour first named in Item 3 of the Declarations, or if the time between the effective date or anniversary and termination of the Policy is less than one year, then such lesser period.

Exh. 4 to July 5, 2005 Philip Affid. at p. 5

Various parts of the policy relate to claim reporting requirements. The first page of the Policy Declarations for the 1999 policy states:

> NOTICE: EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS GENERALLY LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN.

Id. at p. 1.

In the body of the policy, the section entitled "Insuring Agreements" provides:

> COVERAGE A: INDIVIDUAL INSURED INSURANCE
>
> This policy shall pay on behalf of each and every Individual Insured Loss arising from a Claim first made against such Individual Insured during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy . . . .
>
> COVERAGE B: ORGANIZATION INDEMNIFICATION REIMBURSEMENT INSURANCE
>
> This policy shall pay on behalf of the Organization Loss arising from a Claim first made against an Individual Insured during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy . . .
>
> COVERAGE C: ORGANIZATION ENTITY COVERAGE
>
> This policy shall pay on behalf of the Organization Loss arising from a Claim first made against the Organization Loss arising from a Claim first made against the Organization during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy. . . .

Id. at p. 3.

7 - OPINION & ORDER

Section 7 of the 1999 Policy is entitled "NOTICE/CLAIM REPORTING PROVISIONS." It provides, in pertinent part:

> Notice hereunder shall be given in writing to the Insurer named in Item 8 of the Declarations at the address indicated in Item 8 of the Declarations. If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice. A Claim shall be considered to have been first made against an Insured when written notice of such Claim is received by any Insured, by the Named Organization on the behalf of any Insured or by the Insurer, whichever comes first.
>
> (a) The Insureds shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of any Claim made against an Insured as soon as practicable and either:
>
> (1) anytime during the Policy Year or during the Discovery Period (if applicable); or
>
> (2) within 30 days after the end of the Policy Year or the Discovery Period (if applicable), as long as such Claim is reported no later than 30 days after the date such Claim was first made against an Insured.

Id. at p. 6.

III. Defendant's Motion

Defendant contends that the claim against plaintiff is not covered by any policy issued to plaintiff by defendant because plaintiff did not provide notice of the claim to defendant during the policy period in which plaintiff received the claim. For the reasons explained below, I agree with defendant.

A. Timeliness of Notice

The parties do not dispute that plaintiff received notice of a "claim" against it by the students, as that term is defined in the policy, on or about June 30, 2000. There also is no dispute that notice to defendant of the claim against plaintiff did not occur until March 2, 2001, when Gratigny, of American Specialty

8 - OPINION & ORDER

Insurance Services and acting on plaintiff's behalf, wrote to Schwager, Director of Complex Claims for AI Management, regarding the claim against plaintiff.

Defendant argues that there is no coverage for the claim under either the 1999 policy or the 2000 policy. Under the terms of the those policies, plaintiff was required to provide defendant with notice of the students' claims during the same policy period in which plaintiff received the claim. Plaintiff was required to report the claim to defendant while the 1999 policy was still in effect, no later than August 1, 2000. Because it did not do so, defendant contends, the claim is not covered under either policy.

Defendant cites several cases regarding "claims-made" policies and how they differ from occurrence policies. I noted the distinction in a 2002 Opinion & Order in which I explained:

> To successfully invoke coverage under a claims-made policy, a claim must be made against the insured during the policy period and the insured must notify the insurer of the claim during the same period. See Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co., 174 F.3d 653, 658-59 & 658 n.2 (5th Cir. 1999). Unlike occurrence policies, the notice condition must be met to trigger coverage. Id. at 659. The Matador court explained:
>
>> The fact that courts strictly enforce notice requirements in "claims-made" policies, but take a distinct approach towards notice requirements in "occurrence" policies, reflects a difference in the nature of the bargain underlying each type of policy. Courts interpret notice provisions in "claims-made" policies strictly because in these types of policies, unlike in "occurrence" policies, the insured and insurer specifically negotiate the terms of the notice provisions.
>
> Id.; see also Aetna Cas. & Sur. Co. v. Pintlar Corp., 948 F.2d 1507, 1516 (9th Cir. 1991) ("'An "occurrence" policy protects the policyholder from liability for any act done while the policy is in effect, whereas a "claims made" policy protects the holder only against claims made during the life of the policy.'") (quoting St. Paul Fire

9 - OPINION & ORDER

& Marine Ins. Co. v. Barry, 438 U.S. 531, 535 n.3 (1978)).

Maffett v. Westport Ins. Corp., No. CV-01-3078-HU, Op. & Ord. at p. 8 (D. Or. Apr. 15, 2002).

Considering the undisputed facts regarding when the claim was made against plaintiff and when plaintiff notified defendant of the claim along with the language of the policy and the cases discussing the difference between claims-made and occurrence policies, it is clear that plaintiff's claim for defense costs was untimely.

B. Plaintiff's Arguments in Support of Coverage

Plaintiff contends that its insurance claim is covered because defendant waived its right to assert timeliness as a defense and because defendant has suffered no prejudice as a result of the late claim. Plaintiff also contends that certain policy provisions are ambiguous.

1. Waiver

Plaintiff concedes that defendant raised the timeliness of notice issue in its initial response to plaintiff's claim. Plaintiff argues, however, that defendant waived its right to raise timeliness as a defense to plaintiff's claim because later, after initially raising timeliness, defendant raised additional defenses, including the failure to obtain defendant's consent before incurring defense costs in the underlying action. According to plaintiff, when defendant asserts such additional defenses, it suggests that even if plaintiff's notice had been timely, defendant would still deny the claim based on the other defense, and thus, defendant has waived the right to rely on untimely notice as a

10 - OPINION & ORDER

defense.

I reject this argument. First, a "waiver of notice" argument is typically asserted when the insurer completely fails to raise notice before litigation, e.g., School Dist. No. 1, Multnomah County v. Mission Ins. Co., 58 Or. App. 692, 712, 60 P.2d 929, 942 (1982), or initially raises other defenses and only belatedly adds the untimely notice issue. Plaintiff's argument would effectively write all non-notice defenses out of an insurance policy. Insurers would have to choose at their peril between a notice defense and any other defense. There is nothing in the contract language to support this.

Second, even if defendant had not previously raised untimely notice as a defense, I would reject plaintiff's argument for the reasons previously I explained in Maffett:

> Oregon courts have held, in the context of occurrence policies, that an insurer waives the defenses of failure to give notice or to furnish proofs of loss, or defects in the notice or proofs, when it denies liability on other grounds. See School Dist. No. 1, Multnomah County v. Mission Ins. Co., 58 Or. App. 692, 711, 60 P.2d 929, 942 (1982). According to plaintiff, after he notified defendant of the state case on May 25, 1999, defendant denied coverage repeatedly for reasons other than the late notice, and it was not until May 4, 2001, nearly two years after plaintiff's initial tender in 1999, and after plaintiff's third tender of the state case to defendant, that defendant first raised the notice issue.
> While I accept plaintiff's representations as true, . . ., I reject plaintiff's argument. As indicated above, notice under an occurrence policy is intended to serve an entirely different purpose than under a claims-made policy. As defendant explains, "[f]ailure to comply with the notice provision of an occurrence policy would result in a forfeiture of already existing coverage, while notice under a claims-made policy is the very act that creates coverage." Deft's Reply Mem. at p. 10.
> Thus, even if defendant denied coverage initially on other grounds, its conduct cannot create coverage that did not exist under the policy. See Farmers Ins. v. Munson, 127 Or. App. 413, 418, 873 P.2d 370, 373 (1994)

11 - OPINION & ORDER

>        ("Waiver may be available to prevent an insurer from asserting a policy defense if the defense is a condition of forfeiture, but not if it is a condition of coverage"); see also ABCD ... Vision, Inc. v. Fireman's Fund Ins. Cos., 304 Or. 301, 306, 774 P.2d 998, 1001 (1987) (making distinction between conditions of coverage and conditions of forfeiture and holding that "[e]stoppel cannot be invoked to expand insurance coverage or the scope of an insurance contract.").
>        With an occurrence policy, coverage exists by virtue of an act occurring within the policy period. Coverage may be forfeited by the insured if it fails to timely notify the insurer. Waiver may apply to defeat the forfeiture defense. However, with a claims-made policy, the coverage is non-existent until timely notice is made. Plaintiff cannot create coverage with a waiver argument in the context of a claims-made policy.

Maffett, Op. & Ord. at pp. 9-10.

For the reasons previously explained in Maffett, I reject plaintiff's waiver argument.

### 2. Prejudice

Next, plaintiff contends that under Oregon law, defendant must demonstrate that it has suffered prejudice as a result of the timing of the notice before it can deny plaintiff's claim. I rejected this argument in Maffett:

>        For occurrence policies, Oregon law provides that an insurer may not rely on an insured's failure to give timely notice unless the insurer can show prejudice. Lusch v. Aetna Cas. & Sur. Co., 272 Or. 593, 597, 538 P.2d 902, 904 (1975). Plaintiff argues that contrary to the law as established in several other jurisdictions, this same principle should extend to claims-made policies. Both plaintiff and defendant agree that no Oregon case has applied the "notice-prejudice" rule in a claims-made policy.
>        In a Ninth Circuit case interpreting California law, the court held that the notice-prejudice rule does not apply to claims-made policies. Burns v. International Ins. Co., 929 F.2d 1422, 1425 (9th Cir. 1991). The court observed that the distinction between occurrence and claims-made policies is critical. Id. "A claims-made policy reduces the potential exposure of the insurer and is therefore less expensive to the insured. To apply the notice-prejudice rule to a claims-made policy would be to rewrite the policy, extending the policy's coverage at no cost to the insured." Id.

12 - OPINION & ORDER

The reasoning behind the prohibition on applying the notice-prejudice rule in claims-made cases is explained well by the Washington Court of Appeals in a 1989 case. Safeco Title Ins. Co. v. Gannon, 54 Wash. App. 330, 774 P.2d 30 (1989). The court stated that "it makes sense from a public policy standpoint to apply the notice-prejudice rule to notice provisions in occurrence policies because to do so merely preserves existing coverage and, absent a showing of prejudice, does not materially alter the insurer's risk." Id.

In contrast, in a claims-made policy where a claim must be reported during the policy period to invoke coverage in the first instance, to apply the notice-prejudice rule "would materially alter the insurer's risk by making it difficult to ascertan potential liability with certainty at the end of the policy period." Id. The result "would be to provide coverage the insurer did not intend to provide and the insured did not contract to receive." Id.

In a 1998 case from the Middle District of Pennsylvania, the court explained that

> whereas the notice provision in an occurrence policy allows the insurer time to investigate, defend or settle the claim, the notice provision in a claims-made policy provides the insurer with a date certain on which its liability expires, allowing the insurer to more accurately fix its reserves for future liabilities and compute premiums with greater certainty. . . . In light of the different purposes underlying the issuance of these two types of polices, . . . a claims-made insurer need not show prejudice in order to enforce a notice provision.

Ehrgood v. Coregis Ins. Co., 59 F. Supp. 2d 438, 444 (M.D. Pa. 1998) (citation and internal quotation omitted).

Plaintiff relies on a 1999 Seventh Circuit decision in which the court ruled that, under Wisconsin law, the notice-prejudice rule applied to claims-made policies. Lexington Ins. Co. v. Rugg & Knopp, Inc., 165 F.3d 1087 (7th Cir. 1999). There, the court acknowledged the weight of authority holding that a notice-prejudice rule does not apply to claims-made policies because it would convert claims-made policies into occurrence policies, altering a basic term of the contract. Id. at 1092. After making that acknowledgment, the court then concluded that it was bound by a Wisconsin statute mandating that the notice-prejudice rule be applied to "'every' liability insurance policy." Id. at 1092-93. I agree with defendant that the Lexington case is not persuasive authority in the absence of a similar Oregon statute.

Plaintiff also relies on a Tenth Circuit case which

13 - OPINION & ORDER

> applied the notice-prejudice rule in a claims-made policy under Kansas law. Phico Ins. Co. v. Providers Ins. Co., 888 F.2d 663 (10th Cir. 1989). The court's holding, however, appears limited to the particular facts of that case. There, the insurer took action on oral notice provided to the insurer by the insured, including undertaking an investigation to determine its rights and liabilities. Id. at 669. The court noted that the facts and circumstances of the case, and concessions by counsel at oral argument, were consistent with the theory that the insurer had impliedly waived the written notice [requirement] based on its acts and conduct. Id. at 668. Under such circumstances, the court held that the insurer had to show actual prejudice caused by the absence of written notice by the insured. Id. at 669.
> Here, the only notice provided to defendant was the written tender in May 1999. There is no act by defendant to suggest an implied waiver of the policy's written notice requirement. Thus, Phico is distinguishable.
> The cases cited by plaintiff are not on point, either because of distinct facts or because of a difference in the law. I agree with the reasoning expressed by the Ninth Circuit in Burns, the Middle District of Pennsylvania in Ehrgood, and the Washington Court of Appeals in Gannon. I see no reason why Oregon courts would not follow the majority of jurisdictions to have considered this issue and conclude that the notice-prejudice rule does not apply in a claims-made policy.

Maffett, Op & Ord. at pp. 10-13.

For the reasons explained in Maffett, I reject plaintiff's argument on prejudice.

I also reject plaintiff's additional argument that because the policies lack express forfeiture provisions, defendant must show prejudice from the late notice. Plaintiff bases this argument on a Kansas court's reference to the Phico case. In National Union Fire Insurance Co. of Pittsburgh, Pennsylvania v. FDIC, 264 Kan. 733, 957 P.2d 357 (1998), the court was asked to apply a prejudice rule to an untimely proof of loss in the context of a fidelity bond.

The court first determined that there was a lack of distinction between an insurance contract and a fidelity bond and

14 - OPINION & ORDER

held that a fidelity bond was equivalent to an insurance relationship. Id. at 738-39, 957 P.2d at 362. The court then reviewed earlier Kansas cases on the issue of whether the application of a notice-prejudice rule should be extended from a notice of loss to a proof of loss. The court concluded that the prejudice requirement should apply to a proof of loss. Id. at 742, 957 P.2d at 363.

One of the arguments the insurer made as to why the notice-prejudice requirement should not apply to the proof of loss provision in the fidelity bond at issue was that the bond was akin to a discovery policy which in turn was akin to a claims-made policy to which the notice-prejudice requirement had traditionally not been applied. The National Union court had two responses to that argument.

First, the National Union court cited to Phico for the proposition that the Tenth Circuit had applied the notice-prejudice rule to a claims-made policy under Kansas law. As part of its discussion of Phico, the National Union court quoted the part of the Phico decision generally discussing the notice-prejudice rule:

> "Thus, many courts apply the rule that, in the absence of an express forfeiture clause, if the insured gives the insurer timely and adequate notice, even though no submitted in writing or in keeping with policy terms, it is for the obligation of the insurer to show actual prejudice for denial of coverage."

Id. at 744-45, 957 P.2d at 364 (quoting Phico, 888 F.2d at 668).

Second, the National Union court determined that the bond/discovery policy in the case before it was not equivalent to a claims-made policy. Id. at 745, 957 P.2d at 364-65. Rather, the court relied favorably on a District of New Jersey case which had

15 - OPINION & ORDER

distinguished the features of claims-made and discovery policies and concluded that they should not be considered equivalent to one another. Id. (citing Resolution Trust Corp. v. Moskowitz, 868 F. Supp. 634, 647 (D.N.J. 1994)).

Plaintiff relies on National Union's quote from Phico that in the absence of an express forfeiture clause, the notice-prejudice rule applies. I reject this argument.

First, the National Union's quote of the passage from Phico was not required for its holding because after noting the Phico case, the National Union court determined that the bond/policy at issue was not equivalent to a claims-made policy. Thus, the court's reliance on Phico was not necessary to its ultimate conclusion that the notice-prejudice rule should apply to a proof of loss provision in the bond. Accordingly, plaintiff's reliance on National Union for the proposition that the court there held that a notice-prejudice rule applies to claims-made policies which lack an express forfeiture provision is without support.

Second, the quote from Phico in National Union was part of the Phico court's general discussion of notice-prejudice law. The actual holding, as noted in the portion of Maffett discussed above, was limited to the facts. The court explained that if there was an absence of an express forfeiture clause, and if the insured had given timely and oral notice of a claim or occurrence even though not compliant with a policy provision requiring written notice, and if the insurer had acted on the oral notice given to begin its investigation, then the insurer's actions amount to a waiver of a written notice requirement. Phico, 888 F.2d at 669. No such facts appear here.

16 - OPINION & ORDER

For the reasons explained in Maffett, the more persuasive reasoning supports a conclusion that the notice-prejudice rule should not apply in claims-made policies.

### 3. Ambiguous Notice Provisions

Plaintiff argues that the policy's notice provisions are ambiguous because they contain attributes of both a claims-made policy and a "discovery" policy which plaintiff equates to an occurrence policy. Specifically, plaintiff points to the "as soon as practicable" language in the notice provision. Plaintiff argues that because the policies require both notice within the term of the policy period, typical of a claims-made policy, and as soon as practicable, typically required in discovery/occurrence policies, the policy language is ambiguous, requiring a decision by the factfinder regarding the parties' intent.

I reject this argument. As explained by the Sixth Circuit:

> [T]he NOTICE OF CLAIM provision of subparagraph A of paragraph X, quoted above, in declaring that "the insured shall, as soon as practicable, give written notice of any claim . . .," does not render ambiguous the explicit claim reporting requirement spelled out in paragraph I, THE COVERAGE, provision. The district court stated, and we agree, that the "'as soon as practicable' notice provision is intended to protect the insurer from prejudice due to delayed notification of claims covered by the insurance policy." The "as soon as practicable" language is intended to preclude an insured who has knowledge of a claim near the beginning of the policy period, from waiting many months until near the end of the policy period to notify the insurer of the existence of the claim, when such delay would cause prejudice to the insurer. It does not excuse, modify, or render ambiguous the claim reporting requirement that is recited in paragraph I as a condition of coverage.

United States v. A.C. Strip, 868 F.2d 181, 186-87 (6th Cir. 1989); see also Lexington Ins. Co. v. St. Louis Univ, 88 F.3d 632, 634 (8th Cir. 1996) (relying on "as soon as practicable" language in

17 - OPINION & ORDER

the policy's reporting and claims handling endorsement as additional evidence that the policy unambiguously was a claims-made policy).

Moreover, the other policy provisions unambiguously confirm that this is a claims-made policy. For example, the first page of the policy bears a notice providing that "except to such extent as may otherwise be provided herein, the coverage of this policy is generally limited to liability for only those claims that are first made against the insured during the policy period and reported in writing to the insurer pursuant to the terms herein." Exh. 4 to July 5, 2005 Philip Affid. at p. 1. Later, the policy provides that it "shall pay on behalf of each and every Individual Insured Loss arising from a Claim first made against such Individual during the Policy Period . . . and reported to the Insurer pursuant to the terms of this policy . . . ." Id. at p. 3.

There is no ambiguity regarding the status of these policies as claims-made policies or as to their notice reporting requirements.

Because plaintiff's notice to defendant regarding the claim against it was untimely, and because I reject plaintiff's waiver, prejudice, and ambiguity arguments, I grant defendant's motion for summary judgment.

IV. Plaintiff's Motion

Plaintiff's motion is premised on a denial of defendant's motion because it assumes an acceptance of plaintiff's wavier argument in the first instance. Plaintiff goes on to contend that once waiver is accepted, the only remaining question, and the issue that is the focus of its motion, is whether plaintiff has suffered

a compensable loss. Because it argues that there are no material disputes on that issue, it is entitled to partial summary judgment in its favor, with the exact amount of costs owed to be determined in the future.

For the reasons explained above in connection with defendant's motion, I reject plaintiff's waiver argument. As a result, I do not consider plaintiff's arguments regarding the compensability of the claim. I deny plaintiff's motion for summary judgment.

## CONCLUSION

I grant defendant's motion for summary judgment (#18) and I deny plaintiff's motion for summary judgment (#34).

IT IS SO ORDERED.

Dated this __13th__ day of __October__, 2005.


                                        /s/ Dennis James Hubel
                                        Dennis James Hubel
                                        United States Magistrate Judge

19 - OPINION & ORDER